**Lonnie REYNOLDS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–92–00187–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 20, 1993.

Christopher L. Tritico, Houston, for appellant.

John B. Holmes, Jr., Mary Lou Keel, Tammy Garrett, Gloria Klingman, Houston, for appellee.

Before HEDGES, DUGGAN and O'CONNOR, JJ.

## OPINION

HEDGES, Justice.

A jury found appellant, Lonnie Reynolds, guilty of public lewdness and assessed his punishment at one-year confinement and a $2,000 fine. In five points of error, appellant asserts that the trial court erred in admitting certain evidence, in overruling his motion for directed verdict, and in giving a charge that commented on the weight of the evidence. We reverse and remand.

On August 29, 1991, M.D. was at school practicing with her junior varsity volleyball team. When practice ended, she went to the girl's locker room to change. At about 5:15 p.m., M.D. was the only person in the locker room. The girls' varsity team was still practicing in the gym. M.D. heard noises in the office of the girls' volleyball coach, Debra Melrose. Coach Melrose shared this office with appellant, who was the boy's basketball coach. M.D. approached the office to see whether Coach Melrose was there. The office door, which was closed, had a 13–inch square window set four feet, six inches off the floor. The window was "always" covered with paper on the inside of the door. The lower right-hand corner of the paper was torn off. M.D., who is over five feet three inches tall, looked through the hole standing slightly on tiptoe. She saw appellant and an 18–year–old student, R.C., standing about six inches apart talking. They began removing their upper body clothes. M.D. stood watching for three to four minutes. She saw appellant clear Coach Melrose's desk and bend R.C. back onto the desk. She saw his chest touch R.C.'s breasts as he lay on her. M.D. did not tell anyone about what she had seen until October, when she told Coach Melrose.

Appellant was charged with unlawfully and knowingly engaging in sexual contact in reckless disregard of whether another was present who would be offended and alarmed by his acts. This conduct is unlawful under section 21.07 of the Texas Penal Code and is commonly referred to as public lewdness:

(a) A person commits an offense if he knowingly engages in any of the following acts in a public place or, if not in a public place, he is reckless about whether another is present who will be offended or alarmed by this act:

(1) an act of sexual intercourse;

(2) an act of deviate sexual intercourse;

(3) an act of sexual contact;

(4) an act involving contact between the person's mouth or genitals and the anus or genitals of an animal or fowl.

(b) An offense under this section is a Class A misdemeanor.

TEX.PENAL CODE ANN. § 21.07 (Vernon 1989). Generally, laws such as this one seek to "prevent a course of conduct which, in public estimation, constitutes an example detrimental to the morals of the community." 53 C.J.S. *Lewdness* § 2(b)(3) (1948).

Appellant was not charged with acting in a public place. Therefore, the State needed to prove that appellant was reckless about

whether another was present. "Reckless" is defined in section 6.03 of the Penal Code. TEX.PENAL CODE ANN. § 1.07(32) (Vernon 1974).

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX.PENAL CODE ANN. § 6.03(c) (Vernon 1974).

■ In point of error three, appellant contends that he was entitled to a directed verdict because the State did not prove all of the elements of public lewdness. Appellant asserts that the State had the burden to establish beyond a reasonable doubt (1) that there was a substantial and unjustifiable risk that another person was present, and (2) that appellant was aware of the risk and consciously disregarded it.

We evaluate appellant's complaint against the standards for factual insufficiency:

A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. In reviewing the sufficiency of the evidence, we consider all the evidence, both State and defense, in the light most favorable to the verdict. *Moreno v. State*, 755 S.W.2d 866 (Tex.Crim.App.1988). If the evidence is sufficient to sustain the conviction, then the trial judge did not err in overruling appellant's motion.

*Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim.App.1990).

We summarize the evidence of appellant's recklessness in the light most favorable to the verdict as follows: Wheatley High School had three girls' volleyball teams in 1991 with a total of 40 players. On the date of the charged offense, the teams were practicing in the gym. At the time of the charged offense, about 5:15 p.m., the varsity team was still practicing in the gym. That team sometimes stayed as late as 7:00 p.m. The football team was also practicing after school.

The office where appellant committed the charged offense was close to heavily trafficked areas in a large high school—the gym, the girls' locker room, and a main hallway. Students frequented the office, and people often entered without knocking. There was no evidence to establish whether the door was locked; even if it were, Coach Melrose, who was still on the premises, had a key. The window in the office door was covered with paper, but that paper was old and had one corner torn away. Given all these factors, it is clear that an ordinary person would be aware that there was no reasonable expectation of privacy. We hold that a rational trier of fact could affirmatively find beyond a reasonable doubt that there was a substantial and unjustifiable risk that another person would be present who would be offended, and that appellant was aware of the risk and consciously disregarded it. *Madden*, 799 S.W.2d at 693.

We overrule point of error three.

■ In point of error one, appellant asserts that the trial court erred in admitting the entire statement that M.D. gave to the police. Appellant read one sentence from the statement during his cross-examination of M.D., whereupon the State moved to admit the entire document under criminal evidence rule 107, the rule of optional completeness. Appellant argues that because he had read only one sentence from the statement, for the limited purpose of impeaching M.D.'s testimony on one specific point, the trial court improperly admitted the whole statement under rule 107.

On direct, M.D. had testified:

Q: At that point, [M.D.], did you notice anything unusual?

A: I heard something, some noise in Coach Melrose's office, and I thought it was her, so I came back into her

office. I thought the voices was already out of the practice.

On cross-examination, defense counsel impeached M.D.:

Q: Okay. Now, as you got around, did—was it harder to hear the voices in the coach's office as you got closer to the door when you went around to see if Coach Melrose was in there?

A: Was it harder to hear?

Q: Uh-huh.

A: No.

Q: Do you recall when you gave your statement to Officer Tobar?

A: Yes.

Q: Do you recall telling her that you couldn't hear them talking?

A: I said I saw their mouths move.

. . . .

Q: Okay. But exactly what you said was, and let me show it to you, [M.D.], and read it with me, if you will, "They were like talking, I saw their mouths moving so I guess they were talking," that's what you said, right?

A: Yes.

The State then proffered the whole statement. The court admitted it over appellant's objection.

Appellant complains of five statements within the larger statement. He argues that these statements are wholly unrelated to the narrow issue of whether M.D. heard any voices while in the locker room, that they contain hearsay, that they describe extraneous acts of misconduct, and that they are inflammatory and prejudicial. Appellant made specific objections to each statement that he did not want admitted. The State contends that error was preserved for only the third statement. In that portion, M.D. stated:

Last year my mama told me that she worked with Coach Reynolds [appellant] at Jeff Davis High School. She told me that they ran him off from there becuase [sic] he was messing with the girl students.

Appellant challenges the applicability of the rule of optional completeness when statement three is compared to his initial reference to M.D.'s statement.

When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole *on the same subject* may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence. "Writing or recorded statement" includes depositions.

TEX.R.CRIM.EVID. 107 (emphasis added). Rule 107 is designed to guard against "the possibility of confusion, distortion or false impression that could rise from the use of an act, writing, conversation, declaration or transaction out of proper context." *Livingston v. State*, 739 S.W.2d 311, 331 (Tex. Crim.App.1987); *Grunsfeld v. State*, 813 S.W.2d 158, 163 (Tex.App.—Dallas 1991), *aff'd*, 843 S.W.2d 521 (Tex.Crim.App.1992). The purpose of the rule is achieved by "receipt of the balance of the conversation *on the same subject.*" *Roman v. State*, 503 S.W.2d 252, 253 (Tex.Crim.App.1974).

We find that appellant's initial reference to M.D.'s statement, dealing with whether she had heard voices in the office, is unrelated to the subject matter of statement three. Because the introduction of portions wholly unrelated to the matter at issue cannot contribute to the purpose of rule 107, it is improper to rely upon the authority of this rule for the introduction of unrelated portions. *Roman*, 503 S.W.2d at 253. We hold that statement three was not admissible under rule 107.

■ We next examine whether rule 404(b) prohibits the admission of statement three. That rule, relating to extraneous acts, provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other pur-

poses, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction.

TEX.R.CRIM.EVID. 404(b). This rule generally prohibits the circumstantial use of character evidence, even though that evidence may be relevant. "The exclusion of other wrongs evidence under Rule 404 is based, not on its lack of probative value, but rather on its unfair prejudicial effect." *Montgomery v. State*, 810 S.W.2d 372, 377 (Tex. Crim.App.1990).

Appellant argues that the sole probative value of statement three lies in its support of an inference of character conformity. The State admits error but argues that the admission of this evidence was harmless beyond a reasonable doubt.

In determining whether an error is harmless, the reviewing court should:

[F]ocus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able to properly apply law to facts in order to reach a verdict.

*Montgomery*, 810 S.W.2d at 377.

■ The State argues that appellant himself rendered any error harmless by introducing another statement of M.D. in which she recanted her accusations and by cross-examining M.D. on a variety of subjects and incidents including other pretrial statements. Further, the State contends, appellant diminished the impact of statement three by emphasizing its hearsay nature:

Q. So what you have got in here is merely stuff that you were told by somebody else?

A. Yes.

Q. You have no idea whether it is true or not, do you?

A. And I didn't say whether it is true or not.

Q. You're not representing to this jury today that it is true?

A. No, I'm not.

The State asserts it did not mention this statement at any point in the trial, but admits the prosecutor made the following remarks:

Here's a girl, she was shocked. She was offended by what she saw. Well, why didn't she tell anyone until she was specifically confronted with it? Because folks, just because [M.D.] had sense enough to be offended by something like that, I think you could conclude from the evidence in this case that people at Wheatley High School are used to this kind of stuff going on. *Lonnie Reynolds* [appellant] *makes this a regular practice. You heard of several incidents.* This is nothing new. This is nothing shocking to those people.

(Emphasis added.) The State argues that other evidence of extraneous acts somehow neutralizes the impact of statement three and rids the error of its admission of any harm. We disagree.

This statement's potential for unfair prejudice cannot be overstated. It is unreasonable to maintain that the jury, confronted with the hearsay allegation that school officials from another high school "ran [appellant] off ... because he was messing with the girl students," could properly apply the law to the facts. We could not expect the jurors to ignore that extraneous act and not be influenced in deciding whether to convict on a similar incident. The reference to this statement by the State in closing argument highlighted the statement, and evidence of other extraneous acts did not diminish its damage.

We hold that statement three constitutes impermissible evidence of extraneous acts and was inadmissible under rule 404(b). We hold that the admission of the statement was harmful error and sustain point of error one insofar as it addresses statement three. In view of this holding, we do address the other statements and points of error of which appellant complains.

We reverse the judgment of the trial court and remand the case for a new trial.