**Terry Joe BISHOP, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 1516–92, 1517–92.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 24, 1993.

Rehearing Denied Feb. 2, 1994.

---

Thomas D. Glenn, Conroe, for appellant.

Daniel C. Rice, Dist. Atty., and Kathleen A. Hamilton, Asst. Dist. Atty., Conroe, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

A jury found Appellant guilty of three counts of Aggravated Sexual Assault and one count of Burglary of a Habitation and assessed his punishment for each of the offenses at confinement for life and a $10,000 fine. The jury also made an affirmative finding of the use or exhibition of a deadly weapon. The Court of Appeals reversed Appellant's conviction in *Bishop v. State*, 837 S.W.2d 431 (Tex.App.—Beaumont 1992), and remanded the case to the trial court. The State brings this petition on three grounds

for review challenging the Court of Appeals decision. We granted review on two interrelated grounds to review the Court of Appeals' determination that the admission of evidence of Appellant's sexual practices and capabilities was harmful error and that such sexual practices amounted to extraneous misconduct. We will affirm the decision of the Court of Appeals.

In September of 1990, the victim in this case was awakened in the early morning hours by a man with a knife who threatened her life, and that of her children, and forced her to engage in numerous acts of oral, anal, and vaginal intercourse over the course of approximately one to one and one-half hours. The man also forced the victim to fondle herself to show him "what made [her] feel good". According to the victim, as well as testimony based on medical evidence, the assailant did not ejaculate during the attack.

Circumstantial evidence was introduced in the trial which implicated Appellant, but there was no positive identification. The victim testified that she had been blindfolded during the attack and that her assailant had worn a covering over his head and coverings on his hands.

During Appellant's case-in-chief, the State, over strenuous objection, asked Appellant's ex-wife whether Appellant had liked to engage in anal intercourse from time to time; whether Appellant had required her to perform sexual acts such as fondling herself; and whether Appellant was capable of performing sexually for an extended period of time without ejaculating. The witness answered all three questions in the affirmative.

On appeal, the Ninth Court of Appeals agreed with Appellant that the trial court erred in admitting the above evidence of Appellant's sexual "proclivities and practices", holding that, while the evidence was relevant to the case, it was more prejudicial than probative. The Court of Appeals also held that such sexual practices, while not amounting to an extraneous "offense", did rise to the level of extraneous "misconduct".

In its first ground for review, the State challenges the intermediate court's

holding that it was harmful error to admit the following exchanges.

Q. (State) Ms. S——, you are already aware of what we are about to go into and I apologize. I know this might be embarrassing, but I think I need to ask you this. During the course of your relationship with Terry Joe Bishop, did he like to engage from time to time in anal intercourse?

A. (Witness) Yes, sir.

Q. (State) During the course of your relationship in order to satisfy himself, did Terry Joe Bishop ever ask you or require you to perform sexual acts such as fondling on yourself?

A. (Witness) Yes, sir.

MR. SPEERS (State): Pass the witness.

MR. GLENN (Defense): Nothing further, your Honor.

MR. SPEERS (State): Excuse me. I have one more question your Honor.

THE COURT: All right.

Q. (State) Was Terry Joe Bishop during the course of your relationship capable of performing sexually for an extended period of time without ejaculating?

A. (Witness) Yes, sir.

The State argues that the Court of Appeals incorrectly analyzed this issue under TEX.R.CRIM.EVID. 404(b). The State contends that the acts testified to by Appellant's ex-wife did not constitute misconduct and therefore an analysis under that rule is inappropriate.

■ The plain language of Rule 404(b) speaks to "other crimes, wrongs, or *acts*" (our emphasis). There is no requirement that the evidence must be that of another criminal offense or even misconduct in order to fall within the purview of Rule 404(b). The intent of this rule is to prevent the introduction of evidence to prove the character of a person in order to show that he acted in conformity with that character. This prohibition applies as equally to evidence of extraneous acts or transactions as it does to evidence of extraneous offenses. *See Plante v. State*, 692 S.W.2d 487 (Tex.Crim.App.

1985); *Crawley v. State*, 513 S.W.2d 62 (Tex. Crim.App.1974).

· We therefore consider the exchanges to be, at a minimum, evidence of extraneous acts and find that analysis under Rule 404(b) is permissible.

■ The State next argues that even if Rule 404(b) is the correct standard, the evidence was admissible to rebut Appellant's defensive theory and to prove the assailant's identity under the "identity" exception of Rule 404(b). We disagree.

■ The State asserts that it introduced the evidence in question in order to rebut Appellant's defensive theory that he had been framed, and that a drug dealer whom he owed money to might have been the actual rapist. However, the trial record and the State's own actions in this case belie that argument. The record reflects that, in a pre-trial hearing, the State indicated to the trial judge that it was considering offering evidence of Appellant's sexual practices with his ex-wife in order to help prove the identity of the assailant. Although the State ultimately did not offer such evidence in its case-in-chief, it did proceed to be the first party to introduce to the jury Appellant's assertions about a drug dealer being the actual culprit. When the defense then called Appellant's ex-wife to the stand, the State, on cross-examination, asked her questions about Appellant's sexual practices under the guise of rebutting Appellant's theory that a drug dealer had committed the crime and then framed Appellant—a story which the State itself had implanted in the jury's mind. This hardly constitutes "rebuttal". Moreover, the State may not rely on its own questioning as an invitation to rebuttal. *Hatley v. State*, 533 S.W.2d 27, 29 (Tex.Crim.App.1976).

■ The State also argues that the evidence was admissible under the identity exception of Rule 404(b).

In *Montgomery v. State*, 810 S.W.2d 372, 387–388 (Tex.Crim.App.1990), this Court signaled its intent to eschew formalistic determinations of whether extraneous offenses or actions fell into one of the six categories of exceptions identified in Rule 404(b) in favor of a more general analysis of whether the

evidence had relevance apart from character conformity. We held that a party may introduce such evidence when it logically serves to make more probable or less probable an elemental fact or an evidentiary fact that inferentially leads to an elemental fact. *Montgomery*, at 387. Using this standard, the evidence was relevant to prove identity.

This, however, does not end the inquiry. We must next consider whether the probative value of this evidence was substantially outweighed by its prejudicial effect. *See Montgomery*, at 391–393.

■ The traditional rule in regard to the admission of extraneous acts for the purpose of showing identity is that the acts sought to be admitted must be so similar to the offense charged that the accused's acts are marked as his handiwork, that is, his "signature" must be apparent from a comparison of circumstances in both cases. *Beets v. State*, 767 S.W.2d 711, 740 (Tex. Crim.App.1987). *See also Owens v. State*, 827 S.W.2d 911, 915 (Tex.Crim.App.1992); *Messenger v. State*, 638 S.W.2d 883 (Tex. Crim.App.1982) and *Collazo v. State*, 623 S.W.2d 647 (Tex.Crim.App.1981). Evidence of an extraneous act which is sought to be admitted for the purpose of proving identity must demonstrate a much higher degree of similarity to the charged offense than extraneous acts offered for other purposes such as intent. *Plante*, at 493. This is because without such a high degree of similarity, the probative value of such evidence would be substantially outweighed by its prejudicial effect. *Beets*, at 741; *Owens*, at 915; *Messenger*, at 886; *Collazo*, at 648.

The generalized, broad-based questions propounded to Appellant's ex-wife in this case, and her simple affirmations in response, do not provide evidence of actions so unusual and distinctive and so nearly identical to the charged offense as to amount to a "signature" of the Appellant and hence do not rise to the level of similarity required by this Court in order for extraneous acts to be admissible for the purpose of proving identity. We adhere to the standard we articulated in *Collazo* and, examining the evidence in question under this standard, we find that, because the acts described were not suffi-

ciently similar to the crime involved, the prejudicial effect of such evidence substantially outweighed any probative value it might have had.

■ Moreover, in the present case the State had substantial evidence, albeit circumstantial, tying Appellant to this crime. The evidence in question was not particularly useful in pinpointing Appellant as the offender and was, in fact, far less significant than the other evidence which had already been offered by the State. This fact weighs very heavily against the admission of the questionable evidence. *Montgomery*, at 390. The introduction of the controversial evidence was of very little probative value, particularly since the sexual practices described by Appellant's ex-wife were not shown to be especially unique to Appellant.

Conversely, the prejudicial effect of this evidence was high. We have long considered evidence of sexually related misconduct to be inherently inflammatory. *Montgomery*, at 397. Although the evidence in question pertained to practices which are not legally defined as either criminal offenses or misconduct, such practices are considered improper, immoral, and highly offensive by segments of the population and hence testimony linking Appellant to such conduct could have unduly prejudiced some of the jurors against Appellant.

■ Having found that the admission of such evidence by the trial court was erroneous, we turn to the harmfulness of such error.

TEX.R.APP.PRO. 81(b)(2) provides that where there is error, reversal is mandated unless it is shown beyond a reasonable doubt that the error made no contribution to the conviction or the punishment. In our analysis of this rule in *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989), we stated that the focus of a reviewing court is not upon the propriety of the outcome of the trial but, rather, the integrity of the process leading to the conviction.

Neither party has challenged the harm analysis performed by the Court of Appeals in this case. Moreover, our own examination

of the Court of Appeals' opinion does not indicate that that court's analysis of the harm issue was anything other than adequate and proper. Thus there is no need for this Court to revisit the harm analysis issue. *Arcila v. State*, 834 S.W.2d 357 (Tex.Crim.App.1992). We hold that the Court of Appeals did not err in determining that the introduction of this evidence was harmful error.

In its second ground for review, the State alleges that the Court of Appeals erred in holding that the sexual practices testified to by Appellant's wife amounted to extraneous "misconduct". As detailed in our discussion of the State's first ground for review, this is a moot issue. Analysis under Rule 404(b) is appropriate whether or not the sexual practices testified to constituted misconduct. Therefore we need not reach this issue.

The judgment of the Court of Appeals is affirmed and the case remanded to the trial court.

CLINTON, J., concurs in result.

McCORMICK, P.J., and WHITE and MEYERS, JJ., dissent.