TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00367-CR







Tyrone Akito Harris, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 43,891, HONORABLE RICK MORRIS, JUDGE PRESIDING







PER CURIAM


 A jury found appellant guilty of aggravated robbery and assessed punishment at
imprisonment for ninety-nine years. Tex. Penal Code Ann. § 29.03 (West 1994). (1) We will
affirm.

 Ngoc Garcia testified that appellant entered her hair styling shop in Killeen on the
afternoon of November 30, 1993, seized her by the hair, pointed a black semiautomatic pistol at
her head, and demanded her money. Appellant fled with $109 after ordering Garcia to lie on the
floor and threatening to "blow [her] head off." Police later found a pistol matching Garcia's
description in appellant's bedroom. Appellant's fingerprint was found on a can of hairspray in
Garcia's shop.

 Against the advice of his attorney, appellant testified at the guilt-innocence phase. 
He admitted robbing Garcia but denied being armed. According to appellant, the object Garcia
thought was a pistol was in fact a toothbrush case wrapped in a towel. Appellant also testified that
the gun found in his bedroom did not belong to him.

 During cross-examination, appellant was asked over objection, "I want to direct
your attention to November the 11th, at Bonner's Barber Shop at 858 South Fort Hood Street in
Killeen and ask you did you rob the white female in that barber shop at gunpoint repeatedly
threatening to kill her yourself?" Appellant said he did not. Appellant was also asked, "[D]o you
recall asking a man . . . for a ride in his Chevrolet van and him giving you a ride to the 440 Plaza
[the day before the charged offense]? Do you recall getting out of his . . . van, pulling a gun and
said, `I guess I'm going to have to kill you now,' and chasing him around that van?" Appellant
denied doing this. Finally, appellant was asked, "Do you recall on . . . November the 29th . .
. robbing an Oriental female named Chong Daniels at 3 -- 1315 North 8th Street on November
29th at a business called the C and D Barber Shop, do you recall robbing that Oriental female,
kicking her and taking money from a cash register? . . . And using a gun to repeatedly threaten
to kill her?" Appellant again replied that he did not do this.

 After the defense rested, the State called three rebuttal witnesses.



Macalyn Wilson, the owner of Bonner's Barber Shop, testified that appellant
entered her shop on November 11, 1993, seized her by the hair, pointed a black
handgun at her neck, and demanded her money. Appellant repeatedly threatened
to kill Wilson but fled when another person entered the shop. 

Christopher Johns testified that he gave appellant a ride in his van on the night
of November 29, 1993. After they arrived at appellant's destination, a shopping
center called the 440 Plaza, appellant pointed a black pistol at Johns and said,
"Now I'm going to have to kill you." Johns managed to escape and appellant
drove off in the van. 

Chong Daniels, owner of the C and D Barber Shop, testified that appellant
entered her shop on the morning of November 29, 1993, seized her by the hair,
and pointed a pistol at her neck. Appellant ordered Daniels and another person in
the shop to lie on the floor, threatened to kill them if they moved, and left with all
the money he could find.



In point of error two, appellant contends the district court erred by permitting Wilson, Johns, and
Daniels to testify over his objection. Appellant does not contend that the testimony of these
witnesses was either irrelevant or improper character conformity evidence. Tex. R. Crim. Evid.
402, 404. Appellant argues only that the probative value of the witnesses' testimony was
substantially outweighed by the danger of unfair prejudice. Tex. R. Crim. Evid. 403.

 Rule 403 requires a balancing of the probative value of relevant evidence against
its potential for unfair prejudice. This task is committed to the discretion of the trial court, which
should favor admission in close cases. McFarland v. State, 845 S.W.2d 824, 837 (Tex. Crim.
App. 1992); Montgomery v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (opinion on
rehearing). In reviewing the trial court's decision to admit extraneous misconduct evidence over
a rule 403 objection, an appellate court must measure the trial court's ruling against the relevant
criteria by which a rule 403 decision is to be made. These criteria include: (1) how seriously the
ultimate fact issue was contested, (2) whether there was other convincing evidence tending to
establish the ultimate issue to which the extraneous misconduct was relevant, (3) the probative
value of the extraneous misconduct evidence, and (4) whether the jury could be efficaciously
instructed to consider the extraneous misconduct evidence only for its intended purpose. 
Montgomery, 810 S.W.2d at 392-93.

 Whether appellant was armed with a firearm was a seriously contested issue in this
cause. In fact, it was the only contested issue after appellant admitted robbing Garcia. To resolve
this issue, the jury was required to weigh the credibility of Garcia's testimony against that of
appellant. While the police testimony describing the discovery of a pistol in appellant's bedroom
showed that appellant had access to a weapon, it did not directly corroborate Garcia's testimony
that appellant was carrying a weapon on the day in question. The temporal proximity and factual
similarities of the extraneous armed robberies, on the other hand, made them highly corroborative
of Garcia's testimony. While the extraneous misconduct testimony was, as appellant points out,
the last testimony the jury heard before retiring to deliberate, it was not of such a nature that the
jury could not be trusted to comply with a limiting instruction. Considering the relevant criteria
identified in Montgomery, the district court has not been shown to have abused its discretion by
overruling appellant's rule 403 objection to the extraneous offense testimony. Point of error two
is overruled.

 In point of error four, appellant complains of the district court's failure to instruct
the jury to consider the extraneous robberies only for the purpose of deciding whether appellant
used a firearm when he robbed Garcia. Appellant did not request such an instruction or object
to its absence. In the absence of a request, the failure to give a limiting instruction cannot be
complained of on appeal. Tex. R. Crim. Evid. 105(a). Appellant urges that rule 105(a) should
not be applied here because the extraneous misconduct evidence was not admitted during the
State's case in chief, but was instead rebuttal testimony. There is no basis for such a distinction
in the language of rule 105(a) and appellant cites no authority supporting his argument. We will
apply the rule as written. Point of error four is overruled.

 Next, appellant contends his trial counsel was ineffective because he failed to
adequately admonish him regarding the disadvantages of testifying on his own behalf. Appellant
concedes that trial counsel advised him not to testify and warned him that he would be subject to
cross-examination. But appellant asserts that counsel did not tell him that he would open the door
to evidence of the extraneous robberies if he testified that he was unarmed when he robbed
Garcia. Appellant adds in another point of error that counsel compounded his ineffectiveness by
failing to request a limiting instruction regarding the extraneous offenses.

 To prevail on a claim of ineffective assistance of counsel at the guilt stage, an
appellant must prove that counsel made such serious errors that he was not functioning effectively
as counsel and that these errors prejudiced the appellant's defense to such a degree that he was
deprived of a fair trial. Strickland v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 726
S.W.2d 53, 57 (Tex. Crim. App. 1986); and see Moore v. State, 694 S.W.2d 528, 531 (Tex.
Crim. App. 1985); O'Hara v. State, 837 S.W.2d 139, 143 (Tex. App.--Austin 1992, pet. ref'd). 
In reviewing a claim of ineffective assistance, we must indulge a strong presumption that counsel's
conduct fell within the wide range of reasonable professional assistance. Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994).

 Appellant raised his ineffectiveness claim in a motion for new trial. At the hearing
on the motion, trial counsel testified that he was aware of the other allegations made against
appellant, having been appointed to represent appellant in all of the cases pending against him. 
Counsel was asked, "Did you ever tell the Defendant that if he testified and stated that he had not
used a gun the prosecutor might ask the judge to permit rebuttal testimony from these other
witnesses in the other cases?" Counsel replied, "No, sir, I didn't read [the prosecutor's] mind. 
I just told him he was subject to be questioned about every event that he had ever been involved
in." Counsel testified that he told appellant, "[T]here were other witnesses who could testify. 
I don't know -- I'm not going to tell you that I can say that Chong Daniels or any other person
by name would testify, but I told him there were other people who had been victim who may will
[sic] testify, yes." Counsel also told appellant, "[H]e would be subject to cross examination
concerning all of the facts in his particular, you know, surrounding him because this was not a
one-time event for this young man, we're talking four or five different complaints." Finally,
counsel warned appellant, "[I]f he chose to ignore my advice and testify in his own behalf and tell
the fact situation as he perceived it, that he was subject to cross examination by [the prosecutor]
on all facts and factors involving him, and that if he chose to testify I would do what I could to
protect his testimony, but it would be his testimony."

 Appellant testified at the new trial hearing that defense counsel never told him that
the prosecutor might seek to adduce testimony from other witnesses describing his other criminal
conduct. Appellant added that he would not have taken the stand if he had known that it would
result in the admission of the extraneous offense evidence.

 As trier of fact at the new trial hearing, the district court was free to believe trial
counsel's testimony and disbelieve that of appellant. Based on counsel's testimony, the district
court could find that appellant was warned that he would expose himself to cross-examination
about his other criminal misconduct if he testified. The court could also find that while defense
counsel may not have mentioned Wilson, Johns, and Daniels by name, counsel did admonish
appellant that the victims of his other criminal acts might be called to rebut appellant's testimony. 
Finally, the district court could conclude, as do we, that trial counsel made a reasonable effort to
dissuade appellant from testifying on his own behalf. 

 Appellant chose to testify despite counsel's advice not to do so. Appellant cannot
now blame counsel for the consequences of his own poor judgment. McFarland v. State, 845
S.W.2d 824, 847-48 (Tex. Crim. App. 1992). Point of error one is overruled.

 With respect to his failure to request a limiting instruction, counsel explained, "I
felt that a limiting instruction, one, attracted undue attention to a situation and I -- So, sometimes
there are some instructions I don't want to argue to a degree. The other part of it is I thought the
argument addressed the issues." (2) It is not our function to second-guess the strategic decisions of
trial counsel. Appellant has failed to demonstrate that counsel's decision not to request a limiting
instruction, but to instead rely on jury argument, was outside the wide range of reasonable
professional assistance. (3) Point of error three is overruled.

 Finally, appellant complains that the prosecutor misused the extraneous offense
testimony when he argued at the guilt stage:



 And I can't help but remember when Mrs. Macalyn Wilson is testifying she
told you how no matter what, she'll never forget that face and can't forget that face
and sees it every night in her sleep. You don't forget things like that when people
misuse you, abuse you, kick you around, mistreat you, threaten to kill you, holler
at you and, you know, and generally act like an animal.


 . . .


 And if you want this man who's caused this much misery in your
community to so many people to celebrate by turning somersaults out of here in
glee then you convict him of only Robbery. 



Appellant contends that by these remarks, the prosecutor improperly sought to inflame the minds
of the jurors by reminding them of the extraneous robberies. Templin v. State, 711 S.W.2d 30,
34-35 (Tex. Crim. App. 1986); Reynolds v. State, 856 S.W.2d 547, 551 (Tex. App.--Houston [1st
Dist.] 1993, no pet.).

 In each of the opinions cited by appellant, the court held that extraneous misconduct
evidence was erroneously admitted and the prosecutor's argument was cited as evidence of harm
resulting from the error. The present case is distinguishable because we overrule appellant's point
of error complaining of the admission of the extraneous misconduct evidence. Appellant asserts
an error not addressed in Templin or Reynolds: whether the prosecutor's argument alone requires
reversal of the conviction.

 Appellant did not preserve the alleged error by objecting to the argument of which
he now complains. Tex. R. App. P. 52(a). Moreover, the argument was not so egregiously
harmful as to be incurable by an instruction to disregard. See Romo v. State, 631 S.W.2d 504,
505 (Tex. Crim. App. 1982); Espinoza v. State, 843 S.W.2d 729, 730-31 (Tex. App.--Austin
1992, pet. ref'd). Point of error five is overruled.

 The judgment of conviction is affirmed.


Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: May 31, 1995

Do Not Publish

1.  Section 29.03 was amended in a nonsubstantive way after this offense was committed.
2.   At the guilt stage, defense counsel argued, "What difference does it make what his
pattern of conduct was on November the 29th or any day preceding that because he wasn't
charged with that. You're not asked to vote on that, whether or not the Bonner Barber Shop
got robbed or Mrs. Chong Daniels got robbed. Okay. I'm sorry. But that's not what you're
voting on. Okay? That's not what the issue is before you today." Counsel added, "He took
the stand of his own volition, committed [sic] to the criminal act. So, we ask you to find him
guilty of what he told you. Don't get lost in all of the other things because, they're not part
of the trial. The trial is what event occurred on November the 30th . . . ."
3.   The prosecutor, in his own argument, told the jury it was "not being asked to judge his
guilt or innocence" regarding the extraneous robberies. Said the prosecutor, "They're
admissible because in each and every one of them he had a gun, he uses a gun, that's his
habit, that's his routine, that's his MO . . . that's there to refute the lie out of his mouth
when he said he didn't rob Mrs. Garcia with a gun."