Criminal Case Template







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



ANN WHITLOW CLARK,

                            Appellant,

v.

THE STATE OF TEXAS,

                            Appellee.

§

§

§

§

§

No. 08-03-00154-CR

Appeal from the

265th District Court

of Dallas County, Texas

(TC# F-0022003-PR)





O P I N I O N

            This is an appeal from a jury conviction for the offense of murder. The jury assessed
punishment at fifteen years’ imprisonment in the Institutional Division of the Texas Department of
Criminal Justice. We affirm the judgment of the trial court.
I. SUMMARY OF THE EVIDENCE
            Appellant Ann Whitlow Clark met the victim, Michael Hayes, while she was separated from
her husband. Michael Hayes’s brother, Rick Hayes, described Michael as a drug addict and a drug
dealer. Appellant testified that she and Hayes began dating and Hayes began staying over at
Appellant’s farm in Salina, Texas. However, in the fall of 1996 Hayes became violent, so she broke
up with him when she relocated to Dallas to run the struggling Clark Bolt Company, which she had
acquired in her divorce. The equipment at the Clark Bolt Company was badly in need of repair so
Appellant called Hayes, who was adept at working with machinery, to assist her. She continued to
associate with Hayes and “trade favors” despite violence towards her, including an assault in 1997
to which Hayes pled guilty. Appellant testified that she and her employees called the police
approximately ten times regarding Hayes that year because they were afraid of him. Appellant
explained that she continued to associate with Hayes because he “played on [her] emotions” and she
loved him. She wanted to think that he would be different. Nevertheless, she began carrying a gun
in 1997 because Hayes would wait for her in her apartment and rape her. In May 1998, Appellant
ended up in the hospital with a broken jaw and a broken finger allegedly caused by Hayes. She also
recalled two assault cases against Hayes that year. She dropped the charges for one of them and the
other was dismissed. In March 1999, Appellant obtained a one-year protective order against Hayes. 
Hayes violated the order on three occasions. In 1999, Appellant filed another assault case against
Hayes, but the case was no-billed by the grand jury. 
            Doyle Jennings, a businessman from Houston, testified that he met Appellant in March 2000. 
While their initial contact dealt with the possibility of Jennings investing in the Clark Bolt Company,
Jennings and Appellant began dating. According to Jennings, problems developed in their
relationship because Appellant continued to have contact with Hayes. Jennings heard voice
messages left by Hayes, describing them as “very nasty.” He heard Hayes threaten Appellant, but
he never witnessed any violence. Appellant testified that while she was with Jennings, her
relationship with Hayes was sporadic. In April 2000, Appellant filed a complaint with the police
because Hayes fired a gun at Appellant and Jennings through her front door. Problems also
developed between Appellant and Jennings over a dispute about a diamond. Appellant claimed that
Jennings stole a diamond valued at around $50,000. Jennings testified that Appellant had given him
the diamond to sell, that he sold it for $2,000, but that he did not give her the money because she
stole his new Corvette. Appellant filed a theft complaint with the police over the dispute about the
diamond. Her house was raided and she was arrested based on a tip from Doyle Jennings. While
she believed it was a narcotics raid, it was actually a search for stolen cosmetic goods. Upon her
release from jail, Appellant moved into Kathy De La Marre’s house. While there, Hayes attempted
to break in. He also repeatedly left angry messages on the answering machine during late June and
early July.
            The State also introduced a number of messages left on Hayes’s voice mail by Appellant
where Appellant was at various times friendly, such as when she needed help moving a water tank,
and threatening, such as when she said she would burn down the rest of Hayes’s house. Appellant
explained that she threatened him because she had been provoked. 
            Appellant testified that on July 9, 2000, the day of the murder, she and Kathy went to the
Clark Bolt Company warehouse to feed the horses. Both women carried guns belonging to
Appellant, as was their custom. Appellant received a phone call from Hayes at 2:18 p.m., but she
did not recall receiving the call or listening to the phone message. Her phone records also showed
a phone call made to Hayes at 2:28 p.m. Appellant claimed that she did not make that phone call. 
She guessed that Kathy made the phone call, possibly about drugs.
            The witness testified that while she and Kathy were sitting in a breezeway near the building,
Hayes arrived. When Appellant saw Hayes, she had “a bad feeling, a real bad feeling.” According
to Appellant, Hayes asked her, in not so polite terms, if she had slept with a man he had seen her
with recently. When she responded, “Not yet,” he charged at them. He knocked Kathy to the
ground, and then approached Appellant. Appellant claimed that she thought he had a knife and that
he had stabbed Kathy. She began to pull out her gun but Hayes was able to knock it out of her
hands. A struggle then ensued over the gun. While Appellant was backed into a corner, Hayes
quickly ran back to hit Kathy and then returned to Appellant, carrying Kathy’s gun. He pointed the
gun at her head and pulled the trigger, but it did not fire. While Hayes was loading the gun,
Appellant dove for her gun and fired. She shot Hayes in the right side of the abdomen. 
            Appellant and Kathy then ran inside the warehouse and closed the door. After calling a
friend of Kathy’s, Appellant called 911. The call was placed at 4:43 p.m. Police Detective Douglas
Parr arrived within five minutes, shortly after three other officers arrived. When the police arrived,
Appellant told them that she shot Hayes and was arrested. At the scene, Detective Parr saw a body
lying face-down on the ground. He and another officer rolled the body over to check for a pulse and
weapons. It appeared to Parr that Hayes had been dead for quite some time because the blood had
pooled in the lower portions of his body, the arms had rigor mortis, the bloody clothes under the
body were nearly dry, and the body was covered in ants. Due to the blood trail on the ground and
smears on the car, Detective Parr surmised that after being shot, Hayes walked back to his car but
was unable to get inside.
            Dr. Salzeberger testified that lividity and rigor mortis provide only a very broad range of time
of death. Both heat and drugs cause rigor to set in quickly. Dr. Salzeberger would not guess the
effect of the summer afternoon heat on Hayes’s body. Dr. Salzeberger also testified that Hayes had
methamphetamine and amphetamine in his blood, but no alcohol.
            Jennings testified that Appellant called him from jail and asked him to care for her horses. 
Jennings claimed that when she got out of jail, Appellant took him to the bolt company and walked
him through the crime scene, describing what happened. According to Jennings, Appellant told him
that Kathy called Hayes around 2:30 p.m. to bring drugs to the warehouse. When Hayes arrived,
Kathy pulled a gun on him, but he knocked it out of her hand. Appellant then reached for her gun
but Hayes managed to disarm her as well. After a brief struggle, Appellant retrieved the gun and
shot Hayes. Hayes asked Appellant why she shot him and asked for help. She and Kathy followed
Hayes as he stumbled to the car, where he fell down and died. Appellant and Kathy then hid the
drugs, “got their story together,” and called the police about thirty minutes later. After hearing these
details from Appellant, Jennings called the police and gave a statement. He drew a diagram for the
police detailing what Appellant had told him.
            Appellant claimed that she did not walk Jennings through the crime scene and detail what
occurred. While they were there taking care of the horses, he walked around investigating everything
and trying to piece together what occurred on his own. She claimed that Jennings made up his
statement to the police.
            At trial, the jury received a self-defense instruction, but rejected it and found Appellant guilty
of murder. At the punishment phase, Appellant’s counsel did not seek any mitigating instructions
to the jury. The jury assessed a punishment of fifteen years’ imprisonment.
II. DISCUSSION
            In her first issue, Appellant complains that the state trial court was without jurisdiction to
enter a judgment after her case had been removed to federal court according to the procedures
provided in 28 U.S.C.A. § 1446 (2004). According to Section 1446, removal occurs when the
defendant files a notice of removal in the federal district court. Section 1446(a). In a civil case, this
means that the state court cannot proceed. Section 1446(d). However, in a criminal prosecution the
filing of a notice of removal does not prevent the state court from proceeding, “except that a
judgment of conviction shall not be entered unless the prosecution is first remanded.” 28 U.S.C.A.
§ 1446(c)(3). An “entry of judgment” is a formal record of a judgment previously “rendered” by the
court. Jones v. State, 795 S.W.2d 199, 201 (Tex.Crim.App. 1990). Thus, under the terms of the
statute, the court may render a verdict on both guilt and punishment, but the court cannot formally
finalize the judgment by entering it until the case has been remanded from the federal district court. 
By analogy to a removed civil case, if the state trial court oversteps its bounds by entering a
judgment prior to remand, the entry of judgment is invalid. See Everest Reinsurance Co. v. Howard,
950 S.W.2d 800, 804 (Tex.App.--Austin 1997, pet. denied)(holding the state court’s orders void after
the case was removed to federal court). See also Ex parte Seidel, 39 S.W.3d 221 (Tex.Crim.App.
2001)(holding that where a trial court’s actions are not authorized by law, they are void).
            It is undisputed that Appellant took the requisite steps to effect a removal of her case to
federal district court. Thus, under Section 1446(c)(3), the state court had the authority to proceed,
but could not enter a judgment until the case was remanded from the federal court. The federal
district court remanded the case to the state court on February 11, 2003. On February 7, 2003, after
a full trial and prior to receiving the case on remand from the federal court, the state court entered
a judgment. It is clear that the trial court erred in entering the judgment when it did. The entry of
judgment is therefore void. This, then, is analogous to a case in which the trial court failed to enter
judgment, or untimely entered judgment. Unless the defendant has appealed, a failure to render
judgment and pronounce sentence may be corrected at any time by the court’s doing so. 
Tex.R.App.P. 23.1. Thus, prior to losing its plenary power over the case, the trial court has the
authority to enter a judgment when it failed to do so previously. Therefore, in this case the trial court
could have validly entered the judgment upon receipt of the remand order. The court, however, did
not reenter judgment prior to Appellant’s appeal.
            Notwithstanding the trial court’s initial error and the absence of a proper judgment after the
case was remanded, we have the power to modify judgments when the necessary information is
available to do so, and to make any appropriate order as the law and the nature of the case may
require. See Tex.R.App.P. 43.2(b); Tex.R.App.P. 43.6; State v. Shepard, 920 S.W.2d 420, 422
(Tex.App.--Houston [1st Dist.] 1996, pet. ref’d)(analyzing the record to determine whether the court
had sufficient information to reform the judgment even though the judgment entered at trial was void
on its face); McCray v. State, 876 S.W.2d 214 (Tex.App.--Beaumont 1994, no pet.)(reforming the
judgment even when the judgment of the trial court was void because it was unauthorized by law). 
If there were any cause for speculation as to what the judgment of the trial court would be or the
sentence that would be imposed if the case were again before the trial court, the appropriate course
of action would be to dismiss the appeal and allow the trial court to enter a proper judgment. 
However, where, as here, the necessary information is available and there is no reason to speculate
on the course of action the trial court would take, in the name of judicial economy we will reform
the judgment. Because we have before us the judgments rendered at trial and the date on which the
case was remanded, we reform the judgment to reflect the correct date of February 11, 2003. As
reformed, the entry of judgment is correct and Appellant’s first issue is overruled. 
            In Issue No. Two, Appellant contends that the trial court abused its discretion in admitting
during the guilt/innocence phase of trial a videotape that depicts Appellant performing a striptease
for Hayes one month prior to the murder. Specifically, she argues that the videotape was improper
evidence of an extraneous bad act and that its probative value was outweighed by the risk of unfair
prejudice.
            The videotape was found by the police during a search of Hayes’s vehicle. The relevant
portion of the video depicts Appellant posing in front of the camera for Hayes while she is wearing
a shirt and jeans. As she strikes various poses, she pulls down her jeans and lifts up her t-shirt. 
While she never fully removes her clothing, she pulls up her underwear to expose her buttocks and
momentarily exposes her breast. After approximately four minutes, she pulls up her jeans, laughs,
and tucks her shirt in. Hayes says, “That was good, too.” The camera then briefly focuses on
Hayes’s penis. The video was admitted and played for the jury over Appellant’s objection. After
the video was played for the jury, the State rested. Defense counsel recalled Appellant to the stand
to repeat what she had made clear previously: that she did have a sexual relationship with Hayes, that
they shared some good times, and that she was not always afraid of him.
            The trial court has wide latitude in ruling on the admissibility of evidence. Montgomery v.
State, 810 S.W.2d 372, 389-90 (Tex.Crim.App. 1990). We therefore review a trial court’s decision
to admit evidence under an abuse of discretion standard and its ruling will not be disturbed unless
it is outside the zone of reasonable disagreement. Mozon v. State, 991 S.W.2d 841, 846
(Tex.Crim.App. 1999); Arzaga v. State, 86 S.W.3d 767, 773-74 (Tex.App.--El Paso 2002, no pet.). 
This standard applies to both Rule 404(b) and Rule 403 decisions. Montgomery, 810 S.W.2d at 392. 
            In all murder prosecutions, the State is permitted to offer testimony as to the previous
relationship existing between the accused and the deceased, together with all relevant facts and
circumstances going to show the condition of the mind of the accused at the time of the offense. 
Tex.Code Crim.Proc.Ann. art. 38.36(a)(Vernon Pamphlet 2004-05). It is clear that the videotape
portrays a small part of the previous relationship between Appellant and Hayes. If the date on the
tape is correct, the tape shows the nature of the relationship a month prior to the murder. It shows
an example of how Appellant and Hayes interacted when they were alone shortly before the murder. 
The tape, therefore, helps to show what the condition of the mind of Appellant might have been at
the time of the murder. Thus, as a preliminary matter, the tape was admissible. Nevertheless, such
evidence may be excluded under Rules of Evidence 403 and 404(b). Smith v. State, 5 S.W.3d 673,
679 (Tex.Crim.App. 1999).
            Rule 404(b) prohibits the introduction of evidence of extraneous offenses or bad acts during
the guilt/innocence phase of trial for the sole purpose of showing that an actor acted in conformity
with his or her bad character. Tex. R. Evid. 404(b). However, evidence of extraneous bad acts may
be admitted if it is relevant to an issue of consequence in the case, such as rebutting a defensive
theory. Id.; Robbins v. State, 88 S.W.3d 256, 259 (Tex.Crim.App. 2002). Evidence is relevant if
it has “any tendency to make the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without the evidence.” Tex. R. Evid.
401. 
            While sexual conduct can be considered an extraneous offense for purposes of Rule 404(b),
see Bishop v. State, 869 S.W.2d 342, 345 (Tex.Crim.App. 1993), Rule 404(b) only prevents the
admission of such evidence when it is used solely to prove that the defendant acted in accord with
her bad character. Tex. R. Evid. 404(b). Appellant does not make it clear how evidence that she
had a sexual relationship with Hayes served only to prove that when she murdered Hayes she was
acting in conformity with her bad character. On the contrary, the videotape was relevant to the
nature of the relationship between Appellant and Hayes prior to the murder, possibly suggesting
Appellant’s state of mind at the time of the murder. Additionally, the State sought to use the tape
to rebut Appellant’s claim that she was afraid of Hayes and that at the time of the murder she acted
out of self-defense. Appellant claims that there was nothing to rebut, as she testified that she was
not afraid of Hayes all the time and admitted that she might have had sexual contact with Hayes in
the month preceding the offense. Nevertheless, the video shows a specific instance when she was
not afraid. It conceivably sheds light on the level of fear she felt, and shows how she interacted with
Hayes on one occasion close to the time of the murder. Furthermore, the State’s own theory of the
case was that Appellant was a consummate manipulator, who bartered sex for drugs due to financial
difficulties. The videotape is relevant to this theory, as it shows Appellant’s demeanor while
performing for Hayes. In light of these considerations, the trial court did not abuse its discretion in
admitting the videotape over a Rule 404(b) objection. 
            Even relevant evidence admissible under Rule 404(b) may be excluded if its probative value
is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. Unfair prejudice
arises from evidence that has an undue tendency to suggest that a decision be made on an improper
basis, such as an emotional one. Montgomery, 810 S.W.2d at 389. Rule 403 favors the admissibility
of all relevant evidence and carries a presumption that relevant evidence will be more probative than
prejudicial. Conner v. State, 67 S.W.3d 192, 202 (Tex.Crim.App. 2001). The primary policy
concern of Rule 403 is to prevent a jury with a reasonable doubt of a defendant’s guilt from
nevertheless convicting the defendant of the charged offense based solely on the defendant’s “wicked
or criminal disposition” or solely because the defendant is a bad person generally. Robbins v. State,
88 S.W.3d 256, 263 (Tex.Crim.App. 2002).
            Appellant argues that the videotape was unfairly prejudicial due to its sexual content and
because it was not needed to prove the nature of her relationship with Hayes. She asserts that the
jury had ample evidence that she continued her relationship with Hayes despite his violent
tendencies. Because the tape was unnecessary, Appellant claims that it only served to inflame the
jury against her for her bad judgment in relationships.
            Appellant cites Bishop v. State, 869 S.W.2d 342, 346 (Tex.Crim.App. 1993) in support of
her contention. However, we distinguish Bishop. In that case, the court held testimony about the
appellant’s sexual practices--which included sodomy and voyeurism--should have been excluded
under Rule 403. Id. at 346. The court reasoned the sexually related misconduct was inherently
inflammatory because it was considered improper, immoral, and highly offensive by segments of the
population. Id. A rather mild “striptease” with some sexual content in the context of a consensual
adult relationship, in contrast, is not the type of “highly offensive conduct” found inherently
inflammatory in Bishop. Compare with Montgomery, 810 S.W.2d at 393, 396-97; Turner v. State,
754 S.W.2d 668, 673-74 (Tex.Crim.App. 1988); Reynolds v. State, 856 S.W.2d 547, 551
(Tex.App.--Houston [1st Dist.] 1993, no pet.). The videotape did not show any sexual acts being
performed or women being abused. The ultimate issue towards which the evidence was admitted--
whether Appellant acted in self-defense--was seriously contested. This fact weighs in favor of the
trial court’s Rule 403 determination. See Montgomery, 810 S.W.2d at 392. While the videotape was
not particularly compelling evidence of--and the State had other evidence to show--Appellant’s lack
of fear of Hayes (see Montgomery, 810 S.W.2d at 392-93), we hold the trial court did not abuse its
discretion under these facts.
            Further, even if the court did err in admitting the videotape into evidence, we find the error,
if any, was harmless. Error under the rules of evidence in the admission of evidence constitutes
nonconstitutional error. See Johnson v. State, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). A
reviewing court is to disregard nonconstitutional error that does not affect the substantial rights of
the defendant. Tex.R.App.P. 44.2(b). A substantial right is affected when the error had a substantial
and injurious effect or influence in determining the jury’s verdict. King v. State, 953 S.W.2d 266,
271 (Tex.Crim.App. 1997), citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239,
1253, 90 L.Ed. 1557 (1946). We must disregard the erroneous admission of evidence if, after
examining the record as a whole, we have fair assurance that the error did not influence the jury, or
had but a slight effect. Motilla v. State, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002). We must
consider everything in the record, the nature of the evidence supporting the verdict, the character of
the alleged error and how it might be considered in connection with other evidence in the case. Id. 
Other factors to look at are the jury instructions, the State’s theory and any defensive theories,
closing arguments and even voir dire. Id.
            As Appellant has pointed out on appeal, she readily admitted to a sexual relationship with
Hayes, and granted the possibility that they engaged in sexual intercourse near the date indicated on
the videotape. Thus, according to Appellant, the tape adds little to the case against her, suggesting
that the admission of the tape was harmless. She nevertheless maintains that the tape harmed her
case by decreasing her credibility to the point that the jury would not believe her claims of self-defense. While her credibility was of paramount importance to her claim of self-defense, it is highly
doubtful that a relatively mild “striptease, “ the occurrence of which did not contradict her testimony,
had a substantial impact on the jury. Furthermore, the State did not spend much time developing
what occurred in the tape. They simply played it and then rested. During closing argument, the State
mentioned that Appellant’s actions in the video were not the behavior of someone afraid. However,
the State did not emphasize the video. The focus was instead on the audiotapes in evidence, the
physical evidence at the crime scene, and the description of the murder provided by Jennings. 
Defense counsel’s examination of Appellant immediately following the tape reminded the jury that
she had admitted to such a relationship and was not afraid of Hayes all the time, but only when he
was agitated. Furthermore, defense counsel emphasized during closing argument that the fact that
Appellant has dysfunctional relationships and engages in unusual sexual behavior does not remove
her right to defend herself. This very point was covered during voir dire. Defense counsel
specifically asked the jury panel whether they could give the same rights under the law to a person
of low self-esteem who stayed in a bad situation or to a person of bad character, such as a drug
abuser or prostitute. In light of these considerations, we conclude that the admission of the
videotape, even if error, did not have a substantial impact on the verdict. We therefore overrule Issue
No. Two.
            In her final issue, Appellant complains that she received ineffective assistance of counsel
during the punishment phase of trial. Specifically, she claims that her counsel was ineffective
because he failed to request a jury instruction on sudden passion in the punishment charge. 
            To succeed on a claim of ineffective assistance of counsel, the appellant must show (1) that
counsel’s performance was deficient because it fell below an objective standard of reasonableness,
and (2) that there is a likelihood sufficient to undermine confidence in the outcome that, but for the
counsel’s unprofessional errors, the result of the proceeding would have been different. Strickland
v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); Rylander v. State,
101 S.W.3d 107, 109-10 (Tex.Crim.App. 2003). In reviewing a claim of ineffective assistance of
counsel, we indulge a strong presumption that counsel’s conduct falls within the wide range of
reasonable professional assistance and is sound trial strategy. Thompson v. State, 9 S.W.3d 808, 813
(Tex.Crim.App. 1999). In order to overcome this presumption, any allegation of ineffectiveness
must be firmly rooted in the record. Id. Usually, the record on direct appeal will not be sufficient
to show ineffective assistance of counsel. Mitchell v. State, 68 S.W.3d 640, 642 (Tex.Crim.App.
2002). Further, trial counsel should ordinarily be given an opportunity to explain his actions before
he is denounced as ineffective. Bone v. State, 77 S.W.3d 828, 836 (Tex.Crim.App. 2002).
            Appellant did not file a motion for new trial. The record, therefore, is silent regarding her
attorney’s motivation for failing to request a sudden passion charge. Because the record is silent
regarding counsel’s motivations and because Appellant’s attorney never had the opportunity to
explain his actions, Appellant has not met the heavy burden necessary to overcome the presumption
that his approach was within the range of reasonable professional assistance. We repeat the advice
of the Court of Criminal Appeals: Because the reasonableness of counsel’s choices often involve
facts that do not appear in the appellate record, an application for a writ of habeas corpus is the more
appropriate vehicle to raise an ineffective assistance claim. Rylander, 101 S.W.3d 107, 110. 
Appellant’s Issue No. Three is overruled.
            We reform the judgment to reflect it was entered on February 11, 2003 and affirm the
judgment of the trial court, as reformed.


February 17, 2005                                                
                                                                                    RICHARD BARAJAS, Chief Justice

Before Panel No. 2
Barajas, C.J., McClure and Chew, JJ.

(Do Not Publish)