**Johnny David SMITH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

No. 01–00–00433–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 21, 2001.

Rehearing Overruled Aug. 2, 2001.

Robert Gregory East, Perdue, Brandon, Fielder, Collins & Mott, L.L.P., Houston, for appellant.

Bridget Holloway, Asst. Dist. Atty.–Harris County, Houston, for appellee.

Panel consists of HEDGES, NUCHIA, and PRICE, JJ.*

## OPINION

NUCHIA, Judge.

Appellant Johnny David Smith was convicted, by a jury, of public lewdness. The court assessed appellant's punishment at one year confinement and a $400 fine, suspended his sentence, and placed him on 18 months community supervision. On appeal, appellant raises five points of error. We affirm.

## BACKGROUND

On June 12, 1999, 14–year–old N.M. was baby-sitting her next door neighbors' young son. Early that evening, N.M.'s mother, Janice Mitchell, brought over dinner for her. While the front door was open, the child walked outside and onto appellant's driveway, where appellant was sitting in a lawn chair watching his young daughter play. When N.M. went over to retrieve the child, appellant initiated a conversation with her. N.M.'s mother followed her to appellant's house and joined the conversation for a few minutes before leaving and going back home.

At one point during the conversation between appellant and N.M., after Janice Mitchell had left, the topic turned to teenage sex and masturbation. Although at first N.M. went along with the conversation because she knew appellant was a high school health teacher, she later began to feel uncomfortable and attempted to leave on several occasions. Each time, however, appellant insisted she stay and continue the conversation. Eventually, N.M. got the child and returned to the Herrington home. Minutes later, appel-

lant went to the Herrington home and told N.M. not to share with her father the details of their conversation. Disturbed by what had occurred, N.M. called her parents at home. After N.M. called her mother a second time, Russell Mitchell, N.M.'s father, went to appellant's home to speak to him, but appellant's father-in-law told him that appellant and his wife had gone to sleep. At that time, Russell Mitchell returned to his house, intending to confront appellant at a later date.

Later in the evening, appellant again called N.M. at the Herrington home. When she answered, appellant told N.M. to turn off all the lights in the house and go to the Herrington's bedroom window because "he [appellant] and his wife had a surprise for her." Appellant's home is adjacent to the Herrington home. When N.M. looked out the window, she saw a window to appellant's house, with the blinds closed and the lights inside turned off. After ending the conversation with appellant, N.M. again called her parents and told them she was scared. Her parents immediately went over to the Herrington home. When Russell Mitchell arrived, he also looked out of the bedroom window. This time, the lights in appellant's bedroom were on and the blinds raised. No one was in the window. Concerned about all that had occurred, Russell Mitchell called 911. While awaiting the arrival of police officers, Mitchell walked back and forth from inside the house to the front porch. On one of these times, Mitchell again looked up toward appellant's bedroom window and saw appellant and appellant's wife engaging in fellatio directly in front of the window. Eventually, an officer arrived and spoke with the

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Mitchells. No charges were filed at that time.

Detective Dionne of the Harris County Sheriff's Department was assigned to the case about one week later. Dionne interviewed the Mitchells and appellant. Based on these interviews, appellant was charged with public lewdness.

At trial, N.M., Janice, and Russell Mitchell, as well as Detective Dionne, testified for the State. Appellant testified on his own behalf. In his testimony, appellant did not dispute the allegation that he was seen engaging in fellatio in front of his bedroom window. Nor did he deny having a conversation with N.M. about sex, though he claimed it was she who initiated the conversation. According to him, because he is a high school health teacher, N.M. felt comfortable asking him for advice on the topic.

## DISCUSSION

### Legal Insufficiency

Appellant's first and second points of error challenge the legal sufficiency of the evidence. Specifically, appellant contends the State did not establish the elements of Penal Code section 21.07, the statute with which he was charged and convicted of violating. TEX.PENAL CODE ANN. § 21.07 (Vernon 1994) ("Public Lewdness").

■ The standard for reviewing the legal sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). Section 21.07 states, in part:

"A person commits an offense if he knowingly engages in any of the following acts in a public place or, if not in a public place,[1] he is reckless about whether another is present who will be offended or alarmed by his: (1) act of sexual intercourse; (2) act of deviate sexual intercourse; [or] (3) act of sexual contact...." TEX.PENAL CODE.ANN. § 21.07 (Vernon 1994). A person is reckless "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03.

At trial, the State alleged appellant was reckless about whether another was present who would be offended and alarmed by his act of fellatio in a non-public place, namely a room in his house.

In this appeal, appellant does not dispute that he engaged in the act he is accused of. Rather, he argues that Russell Mitchell—the "another" person of the statute—was not "present" for the purpose of section 21.07, since he was not present in appellant's house when he witnessed appellant's act. *Id.* (stating that a person commits public lewdness when "he is reckless about whether another is present who will be offended or alarmed ..."). In response, the State argues that "contrary to an indecent exposure case, the location of the 'act' in a public lewdness case does not control." Therefore, according to the State, "Russell Mitchell was not required to be within the non-public place in order to be 'present.'"

■ The issue before this Court is whether the person offended or alarmed

---

1. "'Public place' means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." TEX.PENAL CODE ANN. § 1.07(40) (Vernon 1994).

need be within the non-public place where the act occurs for the statute to apply. When interpreting criminal statutes, courts focus on the plain language of the text, for that is the best indication of legislative intent. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). Also, "only if the language of the text is ambiguous or if the plain language would lead to absurd results is it appropriate for a court to consider extratextual factors...." *Hines v. State*, 906 S.W.2d 518, 520 (Tex.Crim. App.1995) (citing *Boykin*, 818 S.W.2d at 785–86). The statute is not ambiguous in this case.

▆▆▆ When the language of a statute is unambiguous, the court must gather the intent of the legislature from the plain and common meaning of the words and terms used. *Ex parte Evans*, 964 S.W.2d 643, 646 (Tex.Crim.App.1998); *see also Boykin*, 818 S.W.2d at 785 ("Where the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.") (citations and internal quotations omitted). There is no statutory definition of the word "present"; therefore, it should be given its ordinary meaning. "Present" is defined as "being in view or at hand." WEBSTER'S NEW COLLEGIATE DICTIONARY 903 (1981). We hold that, under section 21.07, "being in view" of the person engaging in the proscribed conduct is all that is required. Other cases applying the same statutory language also have not required the viewer be *within* the same enclosure as the actor. *See, e.g., Green v. State*, 566 S.W.2d 578, 581–83 (Tex.Crim.App.1978) (officer looked into an enclosed booth through a three to five-inch gap between the curtain and the edge of the booth); *Campbell v. State*, 169 Tex.Crim. 515, 338 S.W.2d 255, 257 (1960) (in an indecent exposure prosecution case, "the officers

were not on appellant's property during their period of observation"); *Reynolds v. State*, 856 S.W.2d 547, 548 (Tex.App.— Houston [1st Dist.] 1993, no pet.) (student at school looked into window of office door that was covered with paper but for one small corner torn away).

Our holding today is consistent with the purpose behind section 21.07. As this Court has previously stated, section 21.07 seeks to "prevent a course of conduct which, in public estimation, constitutes an example detrimental to the morals of the community." *Reynolds*, 856 S.W.2d at 548 (internal quotations and citation omitted). We now review the evidence presented at trial to determine legal sufficiency.

▆▆▆ Earlier in the evening, appellant had a conversation with N.M. about sex and masturbation. Following that conversation, he called N.M. at the Herrington home and asked her to look out of a window and into a window of his home where "he and his wife had a surprise for her." Minutes later, when Russell Mitchell looked into that window, appellant and his wife could clearly be seen engaging in fellatio. Russell Mitchell testified that the window in question is clearly visible not only from the Mitchell's home, but also from the street running directly in front of appellant's home. We hold that a rational trier of fact could affirmatively find beyond a reasonable that there was a substantial and unjustifiable risk that another person would be present who would be offended, and that appellant was aware of the risk and consciously disregarded it. We therefore overrule appellant's first and second points of error.

*Extraneous Offense Evidence*

In his third point of error, appellant contends the trial court erred in admitting evidence of appellant's conversation with N.M.

■ Generally, a trial court has broad discretion in determining the admissibility of evidence, and the reviewing court should not reverse unless a clear abuse of discretion is shown. *Allridge v. State,* 850 S.W.2d 471, 492 (Tex.Crim.App.1991). As long as the trial court's ruling was at least within the zone of reasonable disagreement, we should not reverse. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim.App.1990).

Here, the trial court held a hearing before trial to determine whether evidence of the earlier conversation between appellant and N.M. was admissible. N.M. was the only person to testify during that hearing. At the end of the hearing, the State argued that conversation was admissible under 404(b) as "same transaction contextual evidence."

The Court of Criminal Appeals has distinguished two types of background evidence admissible under rule 404(b): (1) evidence of other offenses connected with the primary offense, referred to as "same transaction contextual evidence" and (2) general background evidence referred to as "background contextual evidence." *Mayes v. State,* 816 S.W.2d 79, 86–87 (Tex. Crim.App.1991). Background contextual evidence is "proof of facts that do not bear directly on the purely legal issues, but merely fill in the background of the narrative and give it interest, color, and lifelikeness." *Id.* at 87. In other words, the evidence must be necessary to the jury's understanding of the instant offense because the circumstances of the offense would make little or no sense without the admission of the background contextual evidence. *See id.*

■ Here, we conclude the evidence of the conversation between appellant and N.M. constitutes background contextual evidence because it reveals the motive behind appellant's placing the call to N.M.

and asking her to look at the window, which, in turn, led to Russell Mitchell's looking into the same window. We, therefore, find no error in the admission of this evidence under an exception to rule 404(b).

*Trial Objection*

■ In his fourth point of error, appellant alleges the trial court erred in failing to grant a mistrial after sustaining his objection to Detective Dionne's testimony. At trial, the following exchange occurred between Dionne and the prosecutor:

Q. Did you ask him [appellant] about whether any phone calls had been made [to the Herrington home] that night?

A. Yes, ma'am, I did.

Q. What was the response to that question?

A. At first he claimed that there were no phone calls made. Then he claimed that he may have called because he had left the credit card or something at the house and he was going to have to go look for it. Then I said those were the only phone calls made. And I said, you ever heard of those little boxes you know that give you a number, and I didn't want to say it, and he said you mean Caller ID. And I said yeah. Suppose your number came up on a Caller ID more than three or four times what would you say to that? He said, Well wait a minute. I starred 69 the phone one time and then I called for something else to check on the kid. So I knew right then that he wasn't telling me the truth.

[Defense Counsel]: Objection to that comment. That is nonresponsive, Your Honor.

THE COURT: That is sustained.

After the court's ruling, defense counsel asked for a mistrial, which was denied. On appeal, appellant contends Dionne's

testimony impeached his credibility, in violation of Texas Rule of Evidence 608(a). However, as is evident from the quoted passage, appellant's complaint on appeal does not comport with his objection at trial. We conclude appellant did not preserve the error because the appellate argument does not comport with the trial objection. *See Massey v. State,* 933 S.W.2d 141, 157 (Tex.Crim.App.1996). Appellant's fourth point of error is overruled.

*Closing Argument*

■ Appellant's final point of error asserts the trial court erred in not sustaining his objection to the prosecutor's closing argument concerning appellant's wife, who did not testify at trial. In a pretrial motion in limine, defense counsel stated, in response to the State's attempt to subpoena her, that appellant's wife would not testify because "she is going to invoke her 5th Amendment right not to testify as well as her marital privilege." During opening statements, defense counsel stated:

> You're also going to hear that Mr. Smith is happily married.... And you're going to hear that Diane Smith his wife is a little over eight months pregnant with a very difficult pregnancy. And you will not hear me call her as a witness for the defense because the doctor told her not to testify because she is having difficulty in the pregnancy and it's stressful. So I won't be calling her, and I know you will be wondering why I don't call her.

The prosecutor objected to the statement, claiming it constituted improper opening comments. The trial judge sustained the State's objection.

During closing argument, the prosecutor made the following argument to the jury:

> Defendant says he wasn't aware that the blinds were up because he was in throes of passion. Well the only person that testified to that was him. The only person who testified on his behalf was himself. His wife wasn't here to testify about anything? Why is that? Because it would just hurt him? Would she have anything to add to this? No because he is guilty.

Defense counsel objected to the statement, and the trial judge sustained the objection and instructed the jury to disregard, but denied counsel's motion for a mistrial. In its brief, the State concedes that the "trial prosecutor's jury argument was improper." However, the State argues that the trial court's instruction to disregard was sufficient to remedy the harm.

■ Commenting on a defendant's failure to call a witness is not constitutional error. *See* Tex.R.App.P. 44.2(b); *Carrillo v. State,* 566 S.W.2d 902, 912 (Tex.Crim. App. [Panel Op.] 1978) (holding that the State may comment on the failure of a defendant to call competent and material witnesses, and may argue that the reason for such a failure by the defendant is that any such testimony would be unfavorable to his defense); *McQueen v. State,* 984 S.W.2d 712, 717 (Tex.App.—Texarkana 1998, no pet.) (noting that such "a comment is not proper, however, when it is shown that this witness was unavailable to testify on behalf of the defendant"). We must now determine whether the error warrants reversal. Tex.R.App.P. 44.2.

■ We must examine error in relation to the entire proceeding and determine whether it had a "substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *see also* Tex.R.App.P. 44.2(b). In *Mosley v. State,* 983 S.W.2d 249 (Tex.Crim.App.1998), the Court of Criminal Appeals used the three factors the federal courts generally use in improper argument cases to determine whether reversal was required under 44.2(b). *Mosley,* 983 S.W.2d at 259. The

factors are: "(1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy considered of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Id.*

The first *Mosley* factor is viewed in light of the fact that appellant's own counsel stated in his opening statement that he would not be calling appellant's wife to testify. The second factor implicates the judge's instruction to the jury to disregard the prosecutor's comment. *See Dinkins v. State,* 894 S.W.2d 330, 357 (Tex.Crim.App. 1995) (noting that, generally, an instruction to disregard an improper jury argument is sufficient to cure any harm). The third factor involves a reviewing court's balancing of the other evidence presented at trial. Here, appellant admitted to engaging in the conduct which formed the basis of the charge against him. Thus, the only issue for the jury was whether appellant acted recklessly in placing himself in a position in which he could be seen engaging in the proscribed conduct. Appellant himself testified and presented his side. The jury instead chose to believe the testimony of N.M. and Russell Mitchell. Given that all three factors weigh in the State's favor, we find the error to be harmless. Appellant's fifth point of error is overruled.

We affirm the judgment of the trial court.