**Opinion issued August 28, 2014**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NOS. 01-12-00755-CR, 01-12-00756-CR**

_____

**KEITH ALAN COOK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1263337, 1263338**

## MEMORANDUM OPINION

Keith Alan Cook was convicted of two counts of burglary of a habitation

with intent to commit assault.[1]  The jury assessed punishment of ten years' confinement on each case, the sentences to run concurrently.  In two points of error, Cook contends that (1) the trial court abused its discretion by allowing the State to introduce evidence of extraneous bad acts violating Cook's substantial rights, and (2) the trial court committed harmful error by allowing evidence of three of Cook's prior convictions during the guilt-innocence phase of trial.  We affirm.

## Background

Cook was convicted of two incidents of burglarizing a habitation with intent to commit assault on Monica Parra—April 24, 2010 and May 14, 2010.  Parra, a single mother with a young son who had lived across the street from Cook for several years without incident, testified that, beginning in February 2010, she had several unpleasant, violent experiences with Cook, including the two charged offenses.

Prior to presenting Parra as its first witness, the State informed the trial court that it intended to introduce evidence of two extraneous offenses (March 27, 2010 and May 4, 2010) to prove Cook's intent to commit an assault and Parra's "state of

---

[1]     A person commits burglary if he "enters a habitation . . . with intent to commit a felony, theft or an assault[.]" TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). A person commits an assault if he "intentionally or knowingly threatens another with imminent bodily injury" or "intentionally, knowingly or recklessly causes bodily injury to another." *Id.* § 22.01(a)(1), (2).

2

mind." Cook objected and argued that the State was "jumping the gun" by bringing up these extraneous offenses to show intent, since intent was not yet at issue, and that the evidence was offered solely for the purpose of proving bad character and conduct in conformity with that character, in violation of Texas Rule of Evidence 404. Cook also argued that the evidence was more prejudicial than probative, in violation of Rule of Evidence 403. The trial court overruled Cook's objections and admitted the evidence.

## A. February 2010–Extraneous Bad Acts

Parra testified that in February 2010, Cook appeared uninvited at a Super Bowl party at her home. Cook "harassed" everybody at the party, "threatened people," "took food" that was not offered to him, "cussed at people," and got into a verbal altercation with Parra's brother and uncle. The police were called but no charges were filed against Cook. According to Parra, she had no problems with Cook prior to this incident.

## B. March 27, 2010–Extraneous Bad Acts

Parra also testified that as she was cleaning out her house, Cook "came from across the street," started "cussing" at her, "throwing bottles" on her carport and driveway while complaining about Parra and the other "stupid wetbacks" that lived

in the house.[2]  Cook "punched the front door" and "broke the glass" during this incident.  When Parra left to call the police from her neighbor's house, Cook called her a "stupid bitch," and told her "to be careful" because that is what she gets "for being a single mom."  Again, the police were called but no charges were filed.

## C.    April 24, 2010–Charged Offense

On the morning of April 24, 2010 Parra testified that she was awaken between two and three a.m. by Cook, who had entered her home through her bedroom window, and was pulling her hair out in clumps and taunting her, "I told you, stupid bitch.  I'm going to get you one way or the other."  Cook also told Parra that "if [she] wasn't his, [she] wasn't nobodys."  Fearing for herself and her infant son, she grabbed the child and the two escaped through a window in the next room.  Parra testified that Cook hit her cheek and punched her son in the mouth as she ran to her neighbor's house for help.  Cook was arrested at his home.

## D.    May 4, 2010–Extraneous Bad Acts

Parra testified that she watched as Cook grabbed her brother, who was standing at her front door, and dragged him across the street to Cook's house.

---

[2]    When the State asked Parra about the incident, Cook asked for a limiting instruction.  The trial court overruled the objection and stated, "Instructions of the jury come at the end when I charge the jury."  Cook does not argue on appeal that the trial court erred in denying his request for a contemporaneous limiting instruction or provide any case law on this issue.

4

According to Parra, Cook proceeded to "beat the hell out of" her brother and held a "cracked bottle under [her] brother's throat." After Parra's brother got away from Cook and the police were called, Cook told Parra that she "wasn't going to get away easy" and that "he was still going to be harassing [her] no matter what." Parra also testified that Cook told her brother: "Just because you're here, she's not safe. And once you leave it's still going to be the same." The police were called and Cook was arrested and charged with public intoxication and Class C Assault. The charges were later dismissed.

### E.     May 14, 2010–Charged Offense

While in the kitchen with her son making breakfast on May 14, 2010, Parra heard her screen door open and saw Cook, neither invited nor expected, standing barefoot in her living room. Cook, with a knife in his hand, approached Parra who grabbed her son and threw a pan of hot oil at Cook who "started grabbing the vases, picture frames, throwing it across the living room, breaking whatever he could break." Parra and her son ran to their neighbor's house where Parra called the police. By the time the police arrived, Cook had returned to his house across the street. Parra thought Cook was going to kill her that morning when she saw him standing in her living room holding a knife in his hand.

**F.     Cook's Brother**

On cross-examination, Parra was asked about the sixteen 9-1-1 calls she made to report a problem with Cook or his family—both before and after his May 2010 arrest. In particular, whether she had made the March 15, 2011 call resulting in the arrest of Cook's brother.[3] On redirect examination, Parra testified that Cook sent his brother to harass her into dropping the charges against Cook.

> Q.     (State) Now, in response to defense counsel questioning of you about [Cook's] brother, you, in fact, called the cops on [Cook's] brother, didn't you?
>
> A.     (Parra) Yes.
>
> Q.     Was this after [Cook] sent him over to harass you?
>
> A.     Yes.
>
> Q.     Was this after [Cook] sent him over to make you drop charges?
>
> A.     Yes.

Cook's objection to the State's attempt to inject facts not in evidence was sustained and the jury was instructed to disregard the testimony, but Cook's request for a mistrial was denied. The State then inquired as to the brother's demeanor at her home:

> Q.     (State) Was [Cook's brother] yelling at you?
>
> A.     (Parra) Yes.

---

[3]     There is conflicting evidence in the record as to when Cook's brother went to Parra's property and was arrested.

Q.    What was he saying to you?

A.    That I needed to drop the charges against his brother because he
      has —

The trial court sustained Cook's hearsay objection and instructed the jury to disregard the testimony, but denied Cook's request for a mistrial.

In response to further questions about her encounter with the brother, who lived with Cook across the street, Parra testified that she panicked when, with gait impaired and speech slurred by alcohol, he came unbidden to her home, yelled at and insulted her and refused to leave. Parra was driven from her own home to her next door neighbor to call the police.

Parra testified that her fear of the brother resulted from his "violent history," which she explained stemmed from his "hitting women," "prostitution," and "drugs." Cook's objection to this line of questioning for lack of personal knowledge and speculation were overruled.

**G.    Other State Witnesses**

The jury also heard testimony from the officers who responded to Parra's calls for assistance on March 27th and May 4th, as well as the officer who responded to the May 14th offense, and the lead investigator on both charged offenses. These witnesses corroborated parts of Parra's testimony regarding each incident (i.e., broken glass in Parra's driveway; disheveled appearance, scratches and red marks on her brother's body; the broken vase and picture frames in Parra's

7

living room; the bricks stacked under Parra's bedroom window; and the scar on her son's face). The responding officer on the May 4th incident also testified that Cook initially refused to answer the door and when he finally did answer, would not step outside to answer questions. Rather, using abusive language, Cook swore at the uniformed officer and taunted the officer to come and get him from behind the locked burglar door.

Jocelyn Benavides, a neighbor of both Parra and Cook, testified that Cook was not a good neighbor and that she had been "warned by other neighbors just to stay away." Ms. Benavides recounted one occasion that Parra had run to her house after she had been threatened by Cook's brother. Believing Parra to be endangered, Benavides called the police.

## H. Trial Testimony of Defense Witnesses

Cook denied both burglaries and suggested that Parra and several law enforcement officers were lying about his involvement. Cook denied that any of the extraneous bad acts occurred and testified that he had been in Parra's home only once: when invited by her brother for the 2010 Super Bowl party. Cook also testified that he cooperated with the police as much as possible, including giving a statement after he was arrested. He denied swearing at or directing abusive language towards the officer who tried to speak with him on May 4th.

8

On cross-examination, the State argued that in testifying about his cooperation with law enforcement and denial of cursing the officer, Cook opened the door to impeachment with his criminal history. The trial court overruled Cook's objections and the State inquired about certain facts of Cook's 2002 felony DWI conviction (i.e., that Cook was unable to perform the field sobriety tests because he was "too combative with the officers"). The State also asked if he had been convicted of DWI in 1992 and 1998, but made no inquiry into the facts of either case. Finally, the State asked about the facts of Cook's 2008 criminal mischief conviction (i.e., Cook broke a window in someone's home and fled). Cook explained that it was an accident. On redirect examination, Cook testified that Parra was the one harassing him and his brother by fabricating all of these allegations against them.

Cook's mother testified, too, and established herself as the owner of the house in which Cook and his brother lived. She testified that both of her sons were currently in jail and that she was afraid that she would be arrested next so she had surveillance cameras installed on the house's exterior in September 2011. She also acknowledged that Cook had a problem with alcohol, and that she had supported him through his prior criminal convictions for DWI and criminal mischief.

Cook and his mother were the only defense witnesses.

9

**Evidence of Extraneous Bad Acts**

Cook's first point of error contends that the trial court abused its discretion by admitting testimony regarding the February 2010, March 27, 2010, and May 4, 2010, incidents and Parra's encounter with Cook's brother (i.e., that Cook sent his brother over to Parra's house to threaten to harm her if she did not drop the charges against him), because such evidence has no relevance other than to prove character conformity and is therefore barred by Rule 404. Cook further contends that even if the evidence has noncharacter-conformity relevance under Rule 404, the admission of such evidence is nevertheless barred by Rule 403.

Cook further contends that even if these extraneous bad acts are not barred by Rules 403 or 404, the trial court still erred by allowing the State to present this evidence prematurely (i.e., prior to any need for rebuttal or cross-examination by defense counsel).

**A.     Preservation of Error**

To preserve error in the admission of extraneous bad acts, the defendant must first timely object that the evidence is inadmissible under Rule 404(b) of the Texas Rules of Evidence. *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (en banc) (op. on reh'g). During a pretrial conference, the State indicated its desire to offer evidence of two extraneous bad acts during Parra's testimony, specifically, the incidents on March 27, 2010 and May 4, 2010. The

trial court overruled Cook's objections and held the evidence was admissible. An objection to the admission of testimony regarding the extraneous bad act of February 2010, was never lodged.

Accordingly, Cook's complaints as to the March 27th and May 4th incidents are preserved, but not the February 2010 Super Bowl party incident. *See Montgomery*, 810 S.W.2d at 387.

Cook also challenges Parra's testimony that Cook's brother was sent to threaten her into dropping the charges. Because the trial court *sustained* Cook's objections to the portions of Parra's testimony specifically addressing this issue (i.e., "Was this after [Cook] sent him over to harass you?," "Was this after [Cook] sent him over to make you drop charges?," "That I needed to drop the charges against his brother . . . ."), we construe this argument as a challenge to admission of the other portions of Parra's testimony regarding the brother on the basis of Rules 404 and 403 (e.g., that Cook's brother had a violent history that involved drugs, prostitution, and assaults on women).

Parra never mentioned Cook's brother or her encounter with him until asked during cross-examination (i.e., asking Parra if she called 9-1-1 and had Cook's brother arrested). When the State followed up on this line of questioning during redirect examination, Cook objected to some of the testimony but on different grounds (e.g., lack of personal knowledge, calls for speculation). Cook never

objected to the admission of this testimony under Rules 403 or 404 (i.e., that the evidence was being offered to prove character in conformity or that it was more prejudicial than probative).

Accordingly, we hold that Cook failed to preserve his complaint as to the admission of testimony regarding Parra's encounter with Cook's brother based on Rules 403 and 404. *See Montgomery*, 810 S.W.2d at 387.

Having determined that Cook failed to preserve his complaints as to the admission of testimony regarding the February 2010 Super Bowl incident and Parra's encounter with Cook's brother, we will now evaluate the trial court's decision to admit testimony regarding the March 27th and May 4th incidents.

## B. Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010) (citing *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996)); *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). The trial court does not abuse its discretion unless its decision to admit or exclude the evidence lies outside the zone of reasonable disagreement. *See Martinez*, 327 S.W.3d at 736; *De La Paz*, 279 S.W.3d at 343–44. To be admissible, extraneous bad act or offense evidence must pass the two-prong test imposed by Rules of Evidence 404(b) and 403: (1) the extraneous offense or bad act evidence must be relevant to

a fact of consequence in the case apart from its tendency to prove conduct in conformity with character; and (2) the probative value of the evidence must not be substantially outweighed by unfair prejudice. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *see also De La Paz*, 279 S.W.3d at 344. If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will be sustained, even when the court's underlying reason for the ruling is wrong. *De La Paz*, 279 S.W.3d at 343–44; *see also Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002) (if there is evidence supporting trial court's decision to admit evidence, there is no abuse and appellate court must defer to that decision, even if trial court gave wrong reason for decision).

## C.     Rule of Evidence 404

Evidence of other crimes, wrongs, or acts is not admissible to prove character conformity, but may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." TEX. R. EVID. 404. Rule 404(b) is a rule of inclusion rather than exclusion and the exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive. *De La Paz*, 279 S.W.3d at 343.

Extraneous bad act or offense evidence may also be admissible as contextual evidence. *See Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000). There are two types of contextual evidence: (1) evidence of another offense connected with

the primary offense—"same transaction contextual evidence"; and (2) general background evidence—"background contextual evidence." *Mayes v. State*, 816 S.W.2d 79, 86–87 (Tex. Crim. App. 1991). Background contextual evidence helps the jury "fill in the background of the narrative and give it interest, color, and lifelikeness." *Id.* at 87. "In other words, the evidence must be necessary to the jury's understanding of the instant offense because the circumstances of the offense would make little or no sense without the admission of the background contextual evidence." *Smith v. State*, 200 S.W.3d 644, 649 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd).

Extraneous bad act or offense evidence may also be admitted to prove motive under Rule 404(b). *See Crane v. State*, 786 S.W.2d 338, 349–50 (Tex. Crim. App. 1990); *see also Keen v. State*, 85 S.W.3d 405, 413–14 (Tex. App.—Tyler 2002, pet. ref'd) (holding trial court could have reasonably decided that extraneous offense evidence had non-character conformity relevance where it rebutted defendant's defensive theory that he was framed and showed his motive to commit offense). Although not an essential element of a criminal offense, evidence of motive is "always proper and relevant" to assist in proving the defendant committed the charged offense. *Sypniewski v. State*, 799 S.W.2d 432, 434 (Tex. App.—Texarkana 1990, pet. ref'd) (holding extraneous offense or bad act evidence admissible to prove motive, even though motive was uncontested);

*see also Gosch v. State*, 829 S.W.2d 775, 783 (Tex. Crim. App. 1991) (evidence of motive admissible if relevant as circumstance tending to prove commission of offense and holding trial court did not abuse its discretion by admitting evidence of extraneous offense for purposes of proving motive).

Although the State argued that the March 27 and May 4 extraneous bad acts were admissible to prove Cook's intent to commit an assault and Parra's "state of mind," we can affirm the trial court's evidentiary ruling if it is correct on any theory of law applicable to the case. *See De La Paz*, 279 S.W.3d at 343–44. Here, the testimony regarding the March 27th and May 4th incidents is admissible under Rule 404(b) because it places the charged offenses in context and serves to make the "fact or consequence" that Cook committed the charged offenses more probable by providing a possible motive.

Without evidence of the extraneous bad acts in this case, the jury would have been left with an incomplete (and confusing) picture of two neighbors who lived across the street from one another for years, without incident, until—apparently out of the blue—Cook decided to break into Parra's home and assault her on two separate occasions within a little less than a month. *See Smith*, 200 S.W.3d at 649. These extraneous bad acts show the increasingly violent interactions of Cook with Parra over the span of a few short months and put the relationship between the two neighbors into context. It also suggests a possible

motive for the charged offenses because it raises the inference that Cook was obsessed with Parra and broke into her home and assaulted her on April 24th and May 14th as part of his continuing harassment and intimidation.[4] Thus, at a minimum, it is at least subject to reasonable disagreement whether the evidence of Cook's prior bad acts with regard to Parra made his commission of the charged offenses more probable by providing a possible motive.

Accordingly, we conclude that the trial court did not abuse its discretion in admitting testimony regarding the March 27th and May 4th incidents.

## D.    Rule of Evidence 403

Having determined that the evidence regarding the March 27th and May 4th incidents was permissible under Rule 404, we must now determine whether the probative value of such evidence is substantially outweighed by the danger of unfair prejudice, pursuant to Rule 403.

Although admissible under Rule 404(b), "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. A

---

[4]    In fact, Parra testified that when Cook burglarized her home on April 24th he told her, "I told you, stupid bitch. I'm going to get you one way or the other" and that "if [she] wasn't his, [she] wasn't nobodys." Parra further testified that Cook told her during the May 4th incident that she "wasn't going to get away easy" and that "he was still going to be harassing [her] no matter what."

Rule 403 analysis involves a balance of: "(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Rule 403 favors admissibility, and "the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *see also De La Paz*, 279 S.W.3d at 343. As with Rule 404, a trial court does not abuse its discretion when it admits or excludes evidence pursuant to Rule 403 so long as its decision is within the zone of reasonable disagreement. *See De La Paz*, 279 S.W.3d at 343–44.

Here, Cook first contends that because the trial court (1) failed to address his Rule 403 argument on the record and (2) did not make any findings of fact or conclusions of law, the trial court failed to conduct the Rule 403 balancing test. Cook's argument is without merit. A trial court need not conduct a Rule 403 balancing test on the record; once the rule is invoked, appellate courts presume that

the trial court conducted the test, absent an express refusal to do so. *See Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997) (appellate courts presume trial court engaged in required balancing test once Rule 403 is invoked, and trial court's failure to conduct balancing test on record does not imply otherwise); *see also Santellan v. State*, 939 S.W.2d 155, 173 (Tex. Crim. App. 1997) ("Although appellant asserts that the trial court did not perform the balancing test, the trial court did not explicitly refuse to do the test, it simply overruled appellant's Rule 403 objections. We find nothing in the record to indicate that the trial court did not perform a balancing test, albeit a cursory one.") Nothing in this record indicates that the trial court refused to perform the Rule 403 balancing test. Moreover, "the trial court implicitly makes findings of fact and conclusions of law" when it makes an admissibility ruling. *Green v. State*, 934 S.W.2d 92, 104 (Tex. Crim. App. 1996). Cook requested no oral or written findings and conclusions of the court and the court is not required to do so *sua sponte*. *See id.*

Cook also contends that had the trial court conducted a proper Rule 403 balancing test, the evidence would have been excluded because the probative value of the extraneous bad acts was substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403. Again, we disagree.

With respect to the first two *Gigliobianco* factors, Cook posits that the evidence has little, if any, probative value because it was not relevant for any

18

purpose other than to establish character-conforming behavior, and it was unneeded by the State to counterbalance any defense theories advanced. The "inherent probative force" of the extraneous bad act measures "how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation." *Gigliobianco*, 210 S.W.3d at 641. Because it places the charged offenses in context and serves to make the "fact or consequence" that Cook committed the offenses more probable by providing a possible motive (i.e., harassment or intimidation), the evidence of extraneous bad acts is relevant. *See Gosch*, 829 S.W.2d at 783 (stating that although motive is not element of offense, State is entitled to prove motive "if it is relevant as a circumstance tending to prove the commission of the offense.")

With regard to the third factor, Cook contends that the extraneous bad acts were prejudicial, offered by the State to "excite emotions against [Cook by] portraying him as a violent and threatening criminal" and that the evidence of these bad acts "generated an emotional response from the jury." First, most evidence is prejudicial to one or the other party; the question presented by Rule 403 is whether the evidence is *unfairly* prejudicial. *See Casey v. State*, 215 S.W.3d 870, 883 (Tex. Crim. App. 2007) ("Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it. . . . Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant

19

beyond tending to prove the fact or issue that justifies its admission into evidence."); *see also Gigliobianco*, 210 S.W.3d at 641 (stating "unfair prejudice" refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one).

Second, the extraneous acts or offenses in this case (i.e., criminal mischief, assault, and public intoxication) are not so inherently inflammatory that they tend to elicit an emotional response and impress a jury in some "irrational yet indelible way." *Cf. Wheeler v. State*, 67 S.W.3d 879, 889 (Tex. Crim. App. 2002) ("[A]n extraneous sexual offense will always carry emotional weight and the danger of impressing the jury in an irrational and indelible way."); *Santellan*, 939 S.W.2d at 169 (finding offense of abuse of corpse could potentially affect the jury in emotional way); *Bishop v. State*, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993) (holding "sexually related misconduct and misconduct involving children are inherently inflammatory.").

Finally, we also observe that the jury was provided with an appropriate limiting instruction in the jury charge which "reduced the risk the jury might misuse the evidence during jury deliberations." *Jones v. State*, 944 S.W.2d 642, 654 (Tex. Crim. App. 1996). The record does not suggest that the jury disregarded

the instruction during its deliberations.[5]  *See Kirsch v. State*, 306 S.W.3d 738, 748 (Tex. Crim. App. 2010) (appellate courts presume juries follow trial court's instructions, unless otherwise established by the record).  Because the extraneous bad acts in this case are not the type that would normally generate an emotional response from a jury and there is nothing in the record to suggest that the jury disregarded the trial court's limiting instructions, the third factor weighs in favor of admission.

The fourth and sixth factors concern the tendency of the evidence to confuse or distract the jury from the main issues and the amount of time consumed by the presentation of the extraneous-offense evidence.  *See Gigliobianco*, 210 S.W.3d at 641 ("Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues.").  The State presented six witnesses—four of whom testified about the two extraneous bad acts.  Three of the State's witnesses testified about the March 27 incident involving the broken bottles (i.e., Parra, the responding officer, and the lead investigator on Cook's burglary cases who questioned Cook).  Three witnesses also testified about the assault on Parra's brother on May 4, 2010 (i.e.,

---

[5]  Cook argues that the trial court did not provide a limiting instruction to the jury.  This is incorrect.  Although the trial court denied his request for a *contemporaneous* limiting instruction, it nevertheless, included a limiting instruction in the jury charge.  Notably, Cook does not argue that the trial court *erred* in denying a contemporaneous limiting instruction or provide any case law on this issue.

21

Parra, the responding officer, and the lead investigator on Cook's burglary cases). The two responding officers were called for the sole purpose of testifying about the extraneous bad acts. Given the significant time devoted to presentation of the extraneous bad act evidence, the fourth and sixth factors weigh against admission.

The fifth factor concerns "a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. For example, 'scientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence." *Id.* (citation omitted). Testimony concerning the two extraneous bad acts was not prone to this tendency, as it concerned matters easily comprehensible by laypeople. Thus, the fifth factor weighs in favor of admission.

In sum, as a few factors weighed against admitting the extraneous bad act testimony, and a few weighed in favor of admission, bearing in mind that Rule 403 "envisions exclusion of evidence only when there is a 'clear disparity' between the degree of prejudice of the offered evidence and its probative value," the trial court could have reasonably concluded that this testimony was admissible under Rule 403. *See Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that the trial court abused its discretion. *See Hammer*, 296 S.W.3d at 568.

## E.     Premature Presentation of Extraneous Bad Acts

Cook argues that even if these extraneous bad acts are not barred by Rules 403 or 404, the trial court, nevertheless, erred by allowing the State to present this evidence prematurely (i.e., prior to any need for rebuttal or cross-examination by defense counsel), citing to *Jones v. State*, 587 S.W.2d 115, 120 (Tex. Crim. App. 1979).   Although *Jones* held that the premature admission of the extraneous evidence to be error, it, nonetheless, determined that the error was rendered harmless because the defendant raised a defensive theory which placed intent at issue (alibi), which the prematurely admitted evidence would have been admissible to rebut.  *Jones*, 587 S.W.2d at 120; *see also Rubio v. State*, 607 S.W.2d 498, 502 (Tex. Crim. App. 1980) (citing *Jones*, 587 S.W.2d at 120) (holding premature admission of extraneous offense evidence to prove intent in rape case harmless because defense subsequently raised consent defense which placed intent at issue); *Dickson v. State*, 246 S.W.3d 733, 744 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (holding premature admission of extraneous offense evidence to prove identity harmless because defendant subsequently raised alibi defense, which placed identity at issue).  Cook's subsequent denials of harassing Parra or being in her home uninvited places motive at issue.

We overrule Cook's first point of error.

23

**Evidence of Prior Convictions**

Cook's second point of error contends that, pursuant to Rule of Evidence 609, the trial court erred by allowing testimony of his three prior misdemeanor convictions into evidence during the guilt-innocence phase of trial (i.e., DWI (1993), DWI (1998), and criminal mischief (2008)) and by allowing the State to inquire about the circumstances surrounding his 2002 felony DWI conviction. We need not decide whether the admission of this evidence was error, however, because we conclude that the error in admitting it, if any, would not warrant reversal.

## A. Standard of Review

The violation of an evidentiary rule that results in the erroneous admission of evidence constitutes non-constitutional error. *See* TEX. R. APP. P. 44.2(b); *see also Geuder v. State*, 142 S.W.3d 372, 376 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (holding that trial court's error in admitting prior convictions under Rule 609 is non-constitutional error); *Lopez v. State*, 990 S.W.2d 770, 777 (Tex. App.—Austin 1999, no pet.) (same). Non-constitutional error must be disregarded unless the error affects the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when an error has a substantial and injurious effect or influence in determining a jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *see also Solomon v. State*, 49 S.W.3d

356, 365 (Tex. Crim. App. 2001) (stating that such error is harmless if, after reviewing entire record, reviewing court has "fair assurance that the error did not influence the jury, or had but a slight effect"). Accordingly, a criminal conviction should not be overturned based upon non-constitutional error unless the reviewing court has "grave doubt" that the result of the trial was free from the substantial effect or influence of that error. *See Burnett v. State*, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002). "Grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Burnett*, 88 S.W.3d at 637–38.

In assessing harm resulting from a non-constitutional error, we examine the entire record and "calculate, as much as possible, the probable impact of the error upon the rest of the evidence." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). We consider, among other relevant factors, the testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). We may also consider, *inter alia*, the parties' theories of the case, closing arguments, and whether the State emphasized the error. *See id.*

**B. Analysis**

In the present case, direct evidence in the record supports the verdicts against Cook: Parra's testimony regarding the charged offenses, the corroborating testimony of the responding officer and of the lead investigator, and photographs documenting the damage to Parra's living room on May 14, 2010.[6]

The State's theory of the case, as illustrated by its closing argument, was: that Cook was a bully with a drinking problem, who was obsessed with Parra, who engaged in a pattern of increasingly violent, dangerous, and harassing behavior towards Parra beginning February 2010 at the Super Bowl party, and ending May 14, 2010, with him threatening her with a knife in her own living room. Although this theory relied heavily upon the extraneous bad acts that began in 2010,[7] because they were temporally ill-suited, the State did not rely upon the 1993, 1998, 2002, and 2008 convictions. In fact, the State's brief inquiry into these matters totaled less than six pages of testimony.[8]

Nor did the State specifically mention Cook's misdemeanor DWI convictions, criminal mischief convictions, or the facts surrounding his felony DWI conviction (i.e., he was "too combative with the officers" to perform the field

---

[6] Cook makes no challenge to the sufficiency of the evidence supporting either conviction.

[7] Those which Cook preserved for appellate review but we hold to be admissible.

[8] The State also briefly inquired about these prior convictions during Cook's mother's cross-examination.

sobriety tests) during closing arguments. Although the State's closing focused in part on issues related to these convictions (i.e., Cook's drinking and lack of cooperation with or respect for law enforcement), given that Cook's drinking and belligerence towards law enforcement was already before the jury, the probable impact of this evidence was slight. Indeed, Cook himself testified on direct examination as to a prior arrest, a public intoxication charge, and a felony DWI conviction. The jury could have reasonably inferred that Cook had other prior misdemeanor DWI convictions based upon his own testimony. *See Lopez*, 990 S.W.2d at 778 (admissible felony DWI conviction carries inference that there had been previous misdemeanor DWI convictions regardless of remoteness); *see also Hollen v. State*, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003) (two prior convictions for DWI are elements of offense of felony DWI).

The jury charge contained an instruction limiting its consideration of his prior convictions to whatever measure of credibility they cared to ascribe to his testimony, and instructing the jury not to consider "the same for any other purpose." *See Lopez*, 990 S.W.2d at 779 (concluding that error in admission of evidence of prior misdemeanor convictions for impeachment purposes was harmless, due in part to similar limiting instruction in jury charge). We presume that the jury obeyed the trial court's instructions and this evidence played no role

27

in the determination of guilt. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003).

Although Cook's prior misdemeanor convictions and the facts surrounding his felony DWI conviction may have had some slight effect on the jury's determination, after considering the record as a whole, we cannot say that the admission of this evidence had a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, assuming—without deciding—that the admission of this evidence was erroneous, we hold that any such error was harmless. *See Solomon*, 49 S.W.3d at 365 (stating that non-constitutional error is harmless if, after reviewing entire record, reviewing court has "fair assurance that the error did not influence the jury, or had but a slight effect").

We overrule Cook's second point of error.

## Conclusion

We affirm the trial court's judgment.

Jim Sharp
Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).

28